FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 14, 2018

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:16-CR-06033-EFS |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL** |
| MILES BARTON NICHOLS, | |
| Defendant. | |

On October 16, 2017, the Court commenced jury trial in this matter on Counts 1 through 3 of the Indictment (first trial).[1] ECF Nos. 1, 150. On October 20, 2017, the jury returned a guilty verdict on all three counts. ECF No. 183. On October 23, 2017, the Court commenced a jury trial in this matter on Count 4 of the Indictment (second trial).[2] ECF Nos. 1, 190. On October 25, 2017, the jury returned a guilty verdict on Count 4. ECF No. 196.

/

---

[1] Counts 1 and 2 of the Indictment charged Mr. Nichols with Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841. Count 3 of the Indictment charged Mr. Nichols with Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A).

[2] Count 4 of the Indictment charged Mr. Nichols with Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). The Court severed Count 4 from Counts 1–3 to prevent prejudice to Mr. Nichols. *See* ECF No. 138; *United States v. Nguyen*, 88 F.3d 812 (9th Cir. 1996).

ORDER DENYING MOTION FOR NEW TRIAL - 1

Presently before the Court is Defendant Miles Barton Nichols' Motion for New Trial, ECF No. 207. Having thoroughly considered the parties' briefing and the record, the Court finds oral argument to be unnecessary. For the following reasons, the Court denies Mr. Nichols' Motion.

## I. Applicable Law

Under Federal Rule of Criminal Procedure 33, a court may grant a motion for new trial if "the interest of justice so requires." District courts have broad discretion in deciding whether to grant or deny a new trial. *See United States v. Steel*, 759 F.2d 706 (9th Cir. 1985). Nonetheless, new trials are granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).

## II. Discussion

Mr. Nichols makes six arguments in support of his motion for a new trial.

**A. Prospective Juror No. 20**

First, Mr. Nichols contends that the comments of a member of the venire, Prospective Juror No. 20 (PJ No. 20), tainted the jury pool and biased it in favor of the Government. ECF No. 207 at 2–5. The Government responds that defense counsel elicited the allegedly prejudicial information and that the comments were not in fact prejudicial. ECF No. 208 at 2–6.[3]

/

---

[3] The Court notes that the font size used in the Government's response appears to be smaller than 14 pt. Counsel for the Government is encouraged to ensure that it complies with LR 10.1(a)(2).

1. PJ No. 20's Statement[4]

During voir dire of the first trial, the Court asked members of the venire if they had met or had a relationship with a number of expected witnesses. This witness list included members of Richland Police Department. In response, PJ No. 20 stood up and identified himself as a probation/parole officer for the State of Washington who personally knew and worked with a number of Richland police officers, including officers identified by the Court as expected witnesses. When asked by the Court if he thought he should be removed from the case, PJ No. 20 said he thought he could be neutral but eventually agreed that "another case might be a good idea." Counsel for the Government then inquired if PJ No. 20 thought he would be able to make a fair and impartial decision based on the evidence. PJ No. 20 responded that he believed he could, but that it might be difficult to judge witnesses' testimony independently of his law enforcement background.

Next, defense counsel thanked PJ No. 20 for indicating that he might "have difficulty disagreeing with" Richland police officers and asked him to "tell us a little bit why it might be difficult for you to come to that conclusion." PJ No. 20 responded:

> Just knowing them on a personal level knowing about their morals and knowing them, uh, just on a personal level. I believe that they are outstanding individuals that have high moral standard, and if they testify on something, um, I would be more apt to believe them.

---

[4] Quotations and citations to trial proceedings are taken from preliminary transcripts provided by the Court Reporter. Neither party requested official trial transcripts.

ORDER DENYING MOTION FOR NEW TRIAL - 3

The Court then stopped defense counsel's line of questioning. After a recess, defense counsel moved for a mistrial, arguing his statements tainted the jury pool to the point that it interfered with Mr. Nichols' right to a fair trial. The Court denied defense counsel's oral motion and explained that jurors have the capacity to contextualize PJ No. 20's statement regarding his relationships with Richland police officers and that there is no reason to believe they would accept his characterizations of them. Defense counsel then requested a limiting instruction, which the Court indicated it would consider if defense counsel drafted and submitted to the Court. The Court subsequently struck PJ No. 20 for cause.

2. <u>Discussion</u>

The Sixth Amendment right to jury trial "guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Irvin v. Down*, 366 U.S. 717, 722 (1961). Due process requires that the defendant be tried by a jury capable and willing to decide the case solely on the evidence before it. *Mach v. Stewart*, 137 F.3d 630, 633 (9th Cir. 1997) (citing *Smith v. Phillips*, 455 U.S. 209, 217 (1982)). A potential juror can taint the rest of the venire by making "expert-like statements" that bolster the evidence against the defendant or by mentioning "extrinsic evidence [that is] highly inflammatory and directly connected to the [defendant's] guilt." *United States v. Ortiz-Martinez*, 593 F. App'x 649, 649 (9th Cir. 2015) (quoting *Mach*, 137 F.3d at 633–34).

In *Mach*, during voire dire at trial, a prospective juror who was a social worker with expertise in child psychology made "four separate

ORDER DENYING MOTION FOR NEW TRIAL - 4

statements that she had *never* been involved in a case in which a child accused an adult of sexual abuse where that child's statements had not been borne out." *Mach*, 137 F.3d at 632–33 (emphasis in original). Defense counsel moved for a mistrial on the basis that the prospective juror's statements had prejudiced the other venire members, and the trial court denied the motion. *Id.* at 632. The defendant appealed, and the Court of Appeals for the Ninth Circuit held the trial court erred by denying the defendant's motion for mistrial. The Ninth Circuit panel explained that the prospective juror's statements were "expert-like" and that "the nature of [the] statements, the certainty with which they were delivered, the years of experience that led to them, and the number of times that they were repeated" led to the conclusion that at least one member of the venire was tainted. *Id.* at 633.

Here, PJ No. 20's statement was very different than those made in *Mach*. First, the statement was made only once, as opposed to four times. Second, PJ No. 20's statement was hesitant and was made in response to a question from defense counsel.[5] Third, PJ No. 20 had no basis to provide expert or "expert-like" knowledge like the prospective juror in *Mach*; rather, he was commenting on his personal bias towards his coworkers based on his experiences with them — hardly a unique phenomenon. Jurors are "independent men and women each with a mind of his or her own" *United States v. Vargas-Rios*, 607 F.2d 831, 837 (9th

---

[5] This fact alone likely bars Mr. Nichols' assignment of error. *See Thompson v. Borg*, 74 F.3d 1571, 1573 (9th Cir. 1996) ("We have found no cases of reversal because of 'jury misconduct' or extraneous information, where the defense itself elicited the extraneous information in open court. If reversal on this ground were permitted, defense counsel could plant error in the record of any trial.").

Cir. 1979). Explanations of a juror's biases and suspicions do not taint the entire venire. *Ortiz-Martinez*, F. App'x at 650.

**B.    "Ledger" Testimony**

Second, Mr. Nichols argues that he was "irreparably prejudiced" by the testimony of Detective Flohr and Officer Lawrence during the first trial that referred to notebooks found in Mr. Nichols' hotel room as "ledgers." *See* ECF No. 207 at 5–8. He argues there was insufficient foundation to admit the ledgers as party admissions and that the officers were not qualified to characterize the notebooks as ledgers. *Id*. The Government responds that Mr. Nichols referred to the notebooks as ledgers during his confession, thus laying adequate foundation, and that the officers were qualified to testify regarding the nature of the ledgers. *See* ECF No. 208 at 6–9.

As to Mr. Nichols' argument regarding the admissibility of the ledgers as party admissions, the Government laid proper foundation. Notably, the ledgers were found in Mr. Nichols' room at the M hotel, which constitutes circumstantial evidence that he created them. *See United States v. Gil*, 58 F.3d 1414, 1420 n.4 (9th Cir. 1995) (explaining that, inter alia, drug ledger's presence in defendant's home constituted circumstantial evidence that he authored it). Further, Mr. Nichols himself referred to "ledgers" in a portion of his post-arrest confession that was admitted at trial:

> **Det. Flohr:** Do, um, do you front a lot then and expect them . . .
>
> **Mr. Nichols:** Oh yeah.
>
> **Det. Flohr**: Do, do people pay you back?

ORDER DENYING MOTION FOR NEW TRIAL - 6

**Mr. Nichols:** Oh yeah, you read the ledgers.

**Det. Flohr:** Yeah, oh yeah, but do they come through?

**Mr. Nichols**: If they're on those ledgers they still come through.

**Det. Flohr:** They come through, okay.

**Mr. Nichols:** They're just constantly running off in the red somewhere.

**Det. Flohr**: Yeah, yeah.[6]

Defense counsel argues that Mr. Nichols only referred to the notebooks as "ledgers" because that is how they were characterized in a post-search-warrant evidentiary log left at the hotel room. Thus, the argument goes, the "equivocal nature" of Mr. Nichols' statement does not lay sufficient foundation to qualify the notebooks as party admissions. However, the Government correctly notes that a recorded, voluntary, *Miranda*-compliant confession is "inherently reliable." *United States v. Valdez-Novoa*, 780 F.3d 906, 925 (9th Cir. 2015). The possibility that Mr. Nichols' reference to the notebooks as "ledgers" constitutes something other than an admission by Mr. Nichols that were indeed ledgers could serve to lessen their evidentiary weight, but it would not impact their admissibility under Federal Rule of Evidence 104(a).

As to Mr. Nichols' argument that Det. Flohr and Officer Lawrence were not qualified to provide expert testimony on drug trafficking and thus should not have been permitted to characterize the notebooks as "ledgers," the Court is unpersuaded. A lay witnesses may offer opinion

---

[6] *See* Government's Exhibit 145 (audio clip admitted and played at trial on Counts 1 through 3).

ORDER DENYING MOTION FOR NEW TRIAL - 7

testimony, so long as it is rationally based on their perception, helpful to the jury, and not based on scientific, technical, or other specialized knowledge. Fed. R. Evid. 701. The officers were permitted to rely on their experience and knowledge of the case to opine that the notebooks were "ledgers." That the Government also chose to provide expert testimony supporting the theory that the notebooks were in fact ledgers is inapposite.

**C.     Confrontation of Denae Suhr**

Third, Mr. Nichols contends he was deprived of a fair trial by "restrictions placed on his cross-examination of the government's witness, Denae Suhr," his friend and cohabitant in his room at the M Hotel. ECF No. 207 at 8. The Government responds that Mr. Nichols' objections are non-specific but nonetheless unfounded.

  1.  Ms. Suhr's testimony at the first trial

During the first trial, among other things, Ms. Suhr testified that Mr. Nichols kept methamphetamine in the hotel room, that he distributed methamphetamine, and that he possessed both firearms and a noteworthy amount of cash.[7] Defense counsel successfully impeached Ms. Suhr on a number of bases, including her recurrent drug use, the existence of prior felony convictions, head trauma, and immunity from prosecution. Over the Government's objection, the Court admitted Ms. Suhr's federal immunity agreement, and defense counsel conducted in-depth cross-examination and recross-examination about the agreement's provisions and importance to her, including the following:

Q: Ms. Suhr, this immunity agreement is important to you, right?

---

[7] The Court appointed independent counsel to represent Ms. Suhr and to advise her regarding her testimony in both trials. *See* ECF Nos. 148-49.

ORDER DENYING MOTION FOR NEW TRIAL - 8

```
A: Yes, very.
Q: It's important to you that you not go to jail, right?
A: Yes.
Q: You have children, right?
A: Three.
Q: And you don't want to be separated from them, right?
A: (Nodded.)
Q: And this immunity agreement keeps you out of jail or prison,
right?
A: Yes.
```

The Court limited defense counsel's questioning in some ways, however. The Court did not permit defense counsel to ask argumentative questions such as "[i]mmunity is like a get out of jail free card, right?". Nor was defense counsel permitted to inquire into the sentences she received for her prior felony convictions or the surrounding circumstances of the underlying conduct. Although the Court did inform counsel that Ms. Suhr's testimony was to be limited to the afternoon of the second day of trial because of the trial schedule of her attorney, no counsel objected. Trial continued past 5:00 p.m. until defense counsel had completed cross-examination and two rounds of recross-examination.

2. <u>Ms. Suhr's testimony at the second trial</u>

During the second trial, to avoid prejudice to Mr. Nichols, the Court barred all reference to drug use and distribution. But the Court also warned defense counsel that the door could be opened by a reference to drugs; for example, if defense counsel intended to cross-examine Ms. Suhr about her drug use and drug-related criminal conviction. *See, e.g.*, *United States v. Lujan*, 936 F.2d 406, 411 (9th Cir. 1991).

Ms. Suhr again testified that she had seen Mr. Nichols possess a firearm. Again, defense counsel cross-examined Ms. Suhr and successfully

impeached her regarding her memory loss from a head injury. This time, however, defense counsel attempted to impeach Ms. Suhr regarding her alleged mental illness. The Court dismissed the jury, and the Court heard argument from counsel on whether such cross-examination should be permissible and whether Ms. Suhr was competent to testify. After asking Ms. Suhr questions about her alleged mental illness, the Court indicated it was unconcerned about Ms. Suhr's competency to testify. Regarding cross-examination of Ms. Suhr's mental illness, defense counsel indicated he did not intend to pursue the topic further:

> The Court: Okay. So where do you want to go with this.
> Mr. Sporn: I think I'm good to move off this topic and move on to another one.
> The Court: So when we bring the jury back in what is your intent with regard to this topic.
> Mr. Sporn: I'm going to ask about Ms. Suhr's memory generally, the clarity of things she says she remembers and then move on to a different topic and leave this one.
> The Court: It's up to you. All right . . . .

3. Discussion

The Sixth Amendment's Confrontation Clause permits a defendant "expansive witness cross-examination in criminal trials." *United States v. Lo*, 231 F.3d 471, 482 (9th Cir. 2000). However, it guarantees an "*opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense may wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). The Confrontation Clause is only violated if a court limits relevant testimony resulting in prejudice to the defendant and denies the jury "sufficient information to appraise the biases and motivations of the witness." *Lo*, 231 F.3d at

482 (quoting *United States v. Bensimon*, 172 F.3d 1121, 1128 (9th Cir. 1999)).

Here, the Court permitted defense counsel to conduct broad and in-depth cross-examination of Ms. Suhr at both trials, and defense counsel successfully impeached her on at least one trait in both cases. Moreover, Mr. Nichols has not demonstrated how he was prejudiced by the reasonable restrictions placed on his cross-examination of Ms. Suhr — let alone why justice requires a new trial. *See Pimentel*, 654 F.2d at 545 (reasoning that new trials are appropriate only in "exceptional cases").

**D.     "In Furtherance" Jury Instruction**

Fourth, Mr. Nichols claims he was prejudiced by the Court's articulation of the "in furtherance of" prong of Count Three, Possession of a Firearm in Furtherance of Drug Trafficking. ECF No. 207 at 11. The Court initially declined to issue an instruction defining the phrase "in furtherance of" in the context of the charge. While deliberating, however, the jury requested a "definition of 'in furtherance of the crime' as it pertain[ed] to this case." ECF No. 181. In response, the Court crafted the following instruction:

> **Final Instruction NO. 26**
> "In furtherance" means there must be a connection between the firearm(s) and Defendant's possession of methamphetamine with intent to distribute. In determining whether a firearm was possessed in furtherance of possession of methamphetamine with intent to distribute, you may consider the totality of the circumstances, including the proximity, accessibility, and strategic location of the firearm(s) as part of the Defendant's possession of a distributable amount of methamphetamine.

The Court based Final Instruction 26 directly on language from Ninth Circuit case law, including *United States v. Hector*, 474 F.3d 1150, 1156–59 (9th Cir. 2007) (establishing a list of factors to determine nexus between firearm and drug trafficking crime, including "proximity, accessibility, and strategic location of the firearms in relation to the locus of drug activities"); *United States v. Krouse*, 370 F.3d 965, 967 (9th Cir. 2004) ("Evidence that a defendant merely possessed a firearm at a drug trafficking crime scene, without proof that the weapon furthered an independent drug trafficking offense, is insufficient to support a conviction under § 924(c)."); *United States v. Lopez*, 477 F.3d 1110, 1115–16 (9th Cir. 2007); and *United States v. Rios*, 449 F.3d 1009, 1012–16 (9th Cir. 2006).

Mr. Nichols argues that Final Instruction 26 "appeared to permit the jury to convict on the basis of possession alone, and without any further nexus to the drug offense . . . ." ECF No. 207 at 12. This argument is unfounded; the instruction expressly requires that "there must be a connection between the firearm(s) and Defendant's possession of methamphetamine with intent to distribute."

Although Mr. Nichols may have preferred the Court employ the term "nexus" rather than "connection," the Court explained that it used "connection" to avoid confusing the jury. A defendant is not entitled to the jury instruction of his choosing. Indeed, Ninth Circuit case law suggests the Court would not have erred by refusing an "in furtherance" instruction entirely. *See United States v. Lopez*, 447 F.3d at 1115–16 (holding district court did not err by failing to separately define "in furtherance" and explaining that "in furtherance is a phrase of general

use that naturally connotes more than mere possession"). Accordingly, the Court did not err by issuing Final Instruction 26.

**E.    Lesser-Included Jury Instruction**

Fifth, Mr. Nichols takes issue with the Court's decision to not issue a jury instruction during the first trial informing the jury about the lesser-included offense for Counts One and Two of simple possession. In doing so, he states that in a case involving "almost twice as much methamphetamine," *United States v. Hernandez*, 476 F.3d 791 (9th Cir. 2007), the Ninth Circuit held that a lesser-included instruction was warranted. However, in *Hernandez*, the Court of Appeals expressly hinged their holding on the fact that, in that case, the Government "did not produce testimony on whether Hernandez personally had an intent to distribute the methamphetamine." *Id*. at 799. Further, the Government "produced no evidence that Hernandez had precursor chemicals, glassware, cutting agents, scales, firearms or weapons, or other typical items associated with drug trafficking." *Id*. at 799–800. That being the case, a rational jury could have concluded that Hernandez possessed the methamphetamine for personal use.

This case is dramatically different. Here, there was ample evidence and testimony that Mr. Nichols intended to distribute the methamphetamine in question. First, Mr. Nichols himself admitted in a recorded, post-arrest confession that he was distributing one to three pounds of methamphetamine a week. Second, Ms. Suhr testified that Mr. Nichols distributed drugs to others. And third, police officers seized a number of "typical items associated with drug trafficking" from Mr. Nichols' room at the M Hotel, including firearms, a scale, and multiple

ledgers containing records of drug transactions.[8] *See Hernandez*, 476 F.3d at 799-800. Accordingly, the Court properly concluded that no rational jury could have found Mr. Nichols possessed the methamphetamine for personal use, and a lesser-included instruction was not appropriate.

**F.   Mr. Nichols' Statements on Drug Sales**

As his sixth and final argument, Mr. Nichols contends the Court erred by permitting the Government to play portions of his recorded post-arrest interview in which he confessed to selling one to three pounds of methamphetamine per week. The Court denied Mr. Nichols' pretrial motion seeking to exclude these statements on Rule 403 grounds. The Court found that the statements were intrinsically intertwined with the charges — to include possession with the intent to distribute — and thus their probative value was not substantially outweighed by the danger of unfair prejudice. The Court's finding remains unchanged. The statements were relevant and highly probative to the issue of Mr. Nichols' intent, which was a core issue in the case.

## III. Conclusion

As detailed above, the Court finds that the challenged rulings were proper. And even assuming arguendo that one or more of these rulings did constitute error, Mr. Nichols did not suffer substantial prejudice. After all, the Government presented overwhelming evidence against Mr. Nichols on each count. Therefore, the jury's verdict was supported by the weight of the evidence, and the interest of justice does not require

---

[8] Mr. Nichols kept detailed sales records, including the names of buyers and debts owed to him, quantities of methamphetamine sold, and the amount and nature of payment received (e.g. records of gift cards to various stores and their respective values).

a new trial. *See* Fed. R. Crim. P. 33; *see also Pimentel*, 654 F.2d at 545.

Accordingly, **IT IS HEREBY ORDERED**: Defendant Miles Barton Nichols' Motion for New Trial, **ECF No. 207**, is **DENIED**.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this ___14th___ day of March 2018.

> ___s/Edward F. Shea___
> EDWARD F. SHEA
> Senior United States District Judge

Q:\EFS\Criminal\2016\16-CR-6033.Nichols.ord.deny.mot.new.trial.lc02.docx

ORDER DENYING MOTION FOR NEW TRIAL - 15